COMMONWEALTH vs. WASHINGTON W., a juvenile.

Norfolk. January 4, 2012. - May 10, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Youthful Offender Act. Practice, Criminal,* Dismissal, Discovery.

A Juvenile Court judge properly dismissed, without prejudice, youthful of-
fender indictments charging the juvenile with rape, where, although there
was sufficient hearsay evidence before the grand jury of the threat of
bodily harm to the complainant to support a finding of probable cause
[209-210], the judge correctly concluded that sufficient evidence was with-
held from the grand jury to so seriously taint the proceedings as to warrant
dismissal, in that the prosecutor did not offer in evidence the transcript or
videotape of an interview with the complainant, which would have greatly
undermined the credibility of evidence of the infliction or threat of serious
bodily harm [210-213]; further, the judge did not abuse her discretion in
subsequently dismissing the indictments with prejudice, where the Com-
monwealth had deliberately, wilfully, and repetitively failed to provide
statistical discovery relevant to a defense of selective prosecution that the
judge had ordered, and where the sanction was necessary to cure the
prejudice to the juvenile's right to a fair trial caused by the prosecutor's
egregious misconduct in refusing to produce the ordered discovery
[213-218].

INDICTMENTS found and returned in the Superior Court Depart-
ment on December 9, 2009.

After transfer to the Norfolk County Division of the Juvenile
Court Department, motions to dismiss and for reconsideration
were heard by *Mary M. McCallum,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Alexei Tymoczko,* Assistant District Attorney (*David A. Omiu-
nu,* Assistant District Attorney, with him) for the Commonwealth.

*Patricia L. Garin (Kenneth M. Resnik* with her) for the juvenile.

GANTS, J. The Commonwealth appeals from orders of a judge
in the Juvenile Court dismissing two youthful offender indict-
ments charging the juvenile with statutory rape. The judge ordered

the dismissal after finding that the juvenile had suffered presumptive and actual prejudice from the "Commonwealth's willful and repeated failure to comply with discovery orders." We affirm the judge's dismissal of the two indictments.

1. *Background.* The juvenile has Asperger's Syndrome, as does the complainant. When the juvenile was in the ninth grade and the complainant in the seventh grade, the complainant became friends with the juvenile, and often played at the juvenile's home.[1] On May 7, 2007, after the complainant's mother told her family that she would no longer be the juvenile's aide, the complainant revealed to his parents that he had engaged in various sexual acts with the juvenile that were initiated by the juvenile.

The parents notified the police, and Detective Eric Wade interviewed the parents that day. Three days later, the complainant participated in a Sexual Abuse Intervention Network (SAIN) interview at the Norfolk County district attorney's office, which was recorded and transcribed. On August 7, 2007, the juvenile was charged with two delinquency complaints of rape of a child (statutory rape), both occurring in the month following his sixteenth birthday, and two delinquency complaints of indecent assault and battery on a child under the age of fourteen, alleged to have occurred between October 1, 2006, and March 31, 2007. Although the complainant had reported sexual acts of penetration that occurred when the juvenile was fifteen years of age, neither the juvenile nor the complainant was charged with statutory rape for those incidents.

On August 13, 2008, the juvenile filed a motion seeking discovery of statistical data concerning the Norfolk County district attorney's prosecution of juvenile sexual assault charges, asking the gender and age of the juveniles and complainants. A Juvenile Court judge denied the motion without prejudice. But after our decision in *Commonwealth v. Bernardo B.*, 453 Mass. 158 (2009), the juvenile filed a renewed discovery motion that was allowed in part on March 30, 2009, and the Commonwealth was ordered to produce the discovery no later than May 4,

---

[1] The complainant's mother was employed by the school to serve as the juvenile's one-on-one aide, and she encouraged the friendship.

2009.[2] The Commonwealth moved for reconsideration of that order, which was denied, and a new deadline of June 4, 2009, was set for production of the ordered discovery. On June 2, the Commonwealth moved for relief from the order, claiming that "compliance would be overly burdensome in terms of time, financial cost, and resources." The judge denied the motion, but extended the deadline to produce the statistical data to June 19, 2009. On June 12 the Commonwealth filed a petition for interlocutory review of the discovery order in this court, and the judge on June 18 stayed the order. On June 25, 2010, we issued our decision in *Commonwealth* v. *Washington W.*, 457 Mass. 140, 149 (2010), affirming the discovery order with minor modification.

In December, 2009, while the interlocutory appeal was pending, the Commonwealth indicted the juvenile as a youthful offender for the same two incidents of rape of a child under the age of sixteen alleged in two of the delinquency complaints, and nol prossed those two delinquency complaints. On March 2, 2010, the juvenile moved to dismiss the youthful offender indictments. The judge granted the juvenile's motion to dismiss the indictments without prejudice on July 2, 2010. The judge found that the grand jury were not presented with sufficient evidence that "the offense involves the infliction or threat of serious bodily harm," which in the circumstances of the case was required to obtain a youthful offender indictment under G. L. c. 119, § 54. The judge also found that "sufficient evidence was withheld from the grand jury to so seriously taint the proceedings as to warrant dismissal of the indictments."[3] The two pending delinquency complaints were not affected by this order of dismissal.

At a status hearing on July 8, 2010, the juvenile filed a renewed motion for the statistical discovery addressed by this

---

[2]"The judge granted the juvenile's discovery requests in part, concluding that '[t]he requested information is material and relevant in that, if it yielded evidence suggestive of selective prosecution, it would enable the [juvenile] to generate valid statistics or other objective data of the kind that has been found sufficient in other cases to present a prima facie case of discriminatory arrest and charging.' " *Commonwealth* v. *Washington W.*, 457 Mass. 140, 145 (2010).

[3]The judge did not find that the prosecutor knowingly presented false information to the grand jury to obtain the indictments.

court in *Commonwealth* v. *Washington W., supra.* The prosecutor represented that the required discovery would be produced at the next scheduled court date. The next scheduled court date was August 12, 2010, and a hearing was conducted that day on the Commonwealth's motion for reconsideration of the dismissal of the indictments and on the juvenile's renewed motion for statistical discovery. The Commonwealth failed to produce the promised statistical discovery, and informed the judge that it no longer considered itself obligated to provide the discovery because the youthful offender indictments had been dismissed and the Commonwealth intended to file a nolle prosequi on the delinquency complaints. The judge noted that the Commonwealth's motion for reconsideration indicated that the Commonwealth was still affirmatively pursuing prosecution of the indictments, and ordered the Commonwealth to produce all discovery no later than August 31, 2010. The judge scheduled a hearing on September 1, 2010, to review the Commonwealth's compliance.

At the hearing on September 1, the Commonwealth filed a nolle prosequi on the delinquency complaints and informed the judge (who was not the judge who had ordered the discovery) that the Commonwealth did not have to produce any discovery because the youthful offender indictments had been dismissed and the delinquency complaints had been nol prossed. The judge rescheduled the matter for October 7, to be heard by the judge who had issued the discovery order.

On October 5, the juvenile moved to dismiss the youthful offender indictments with prejudice because of the Commonwealth's failure to produce the ordered discovery. On that date the judge denied the Commonwealth's motion for reconsideration, but the denial was not entered on the docket until October 7.

On October 7, the prosecutor informed the judge that he had the required discovery with him, but refused to produce it, arguing that he no longer was obligated to produce the discovery because the indictments had been dismissed. He conceded that the statistical information ordered discovered did not contain any personal or sensitive information, but declined to accept a protective order that would prohibit disclosure to any nonparty and limit the use of this data to the juvenile's preparation, explora-

tion, and mounting of a selective prosecution defense. The judge allowed the juvenile's motion to dismiss with prejudice on October 7, and issued a memorandum of decision and order nunc pro tunc on November 15, 2010, setting forth her findings of facts and reasons for the dismissal with prejudice. In short, the judge found that the Commonwealth was pursuing its prosecution of the juvenile for the alleged sexual assaults that were the subject of the youthful offender indictments, because it appealed from both her July 2 order dismissing the indictments without prejudice and her October 7 order of dismissal with prejudice. She found that the Commonwealth had refused to provide the discovery she had ordered be produced, and that the refusal was "deliberate, willful and repetitive." The judge found that the Commonwealth's "egregious" conduct "gives rise to a determination of presumptive prejudice and warrants dismissal." The judge also found that the "prolonged and repeated failure of the Commonwealth to provide the statistical information" caused the juvenile "actual prejudice" because it denied him the opportunity to obtain the information necessary to "assess, explore and mount a claim [of] selective prosecution."

2. *Discussion.* The Commonwealth appeals from the judge's order of July 2 dismissing the youthful offender indictments without prejudice (as well as the October 5 denial of its motion for reconsideration), and from her order of October 7 dismissing the indictments with prejudice. We address first the July 2 dismissal without prejudice.

a. *July 2 order dismissing the youthful offender indictments without prejudice.* We briefly summarize the evidence before the grand jury that returned the youthful offender indictments. The grand jury heard only the testimony of Detective Wade. Wade testified about his interview of the complainant's parents and read to the grand jury his report of the SAIN interview, which he observed through a one-way mirror. Although the SAIN interview was videotaped and transcribed, neither the videotape nor the transcript was made available to the grand jury.

Wade testified that the parents told him that their son had told them that the juvenile "would push his pants down and then push him onto the ground and he would put his penis in his [anus]." The complainant told his parents that the juvenile had instructed

him not to tell anyone. When the parents asked their son why he had not said anything to them, he said "he was afraid to."

Wade also read to the grand jury his report of the SAIN interview of the complainant, which contained the following information:

1. The complainant was forced by his mother into a friendly relationship with the juvenile.

2. The complainant was "sexually harassed" by the juvenile.

3. The juvenile would try to put his penis in the complainant's anus, and did this about fifteen times.

4. The juvenile would stand behind the complainant, pull down his pants and underwear, "and then he would force [the complainant] onto the ground and enter him from that position." Although Wade's police report contained this last statement, at no time during the SAIN interview did the complainant say that the juvenile forced him to the ground. Rather, during the SAIN interview, the complainant said that the juvenile generally penetrated him from behind when both were standing, but sometimes the complainant would be face down on the floor and the juvenile would be on top of him.

i. *Sufficiency of the evidence.* "[A]t the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him" (citation omitted). *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). The juvenile does not challenge the sufficiency of the evidence identifying him as the person who engaged in acts of sexual penetration with the complainant when the complainant was under the age of sixteen, and therefore incapable of giving consent under the law. But where, as here, the Commonwealth indicts a juvenile as a youthful offender under G. L. c. 119, § 54, the Commonwealth must prove, in addition to the elements of the crime of rape of a child, the three elements required to charge the juvenile as a youthful offender: (1) the juvenile was between fourteen and seventeen years old at the time of the offense; (2) the offense, if committed by an adult, is punishable by imprisonment in State prison; and (3) the juvenile has either previously been committed to the Department of Youth Services, *or* "the offense involves the infliction or threat of serious bodily harm," *or* the person committed a violation of G. L. c. 269,

§ 10 (*a*), (*c*), or (*d*), or § 10E. G. L. c. 119, § 54. See *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 865 (2001) (*Quincy Q.*) ("if the Commonwealth determines to proceed against a juvenile by indictment, it must present at the grand jury stage sufficient evidence of the underlying offense to warrant a finding of probable cause that the underlying crime has been committed . . . as well as sufficient evidence that the requirements set forth in G. L. c. 119, § 54, have been met" [citation omitted]). Because there is no allegation in the case that the juvenile violated G. L. c. 269, or had previously been committed to the Department of Youth Services, the Commonwealth was required to present the grand jury with sufficient evidence to support a finding of probable cause that the offense involved the "infliction or threat of serious bodily harm."

We conclude that there was sufficient evidence before the grand jury of the threat of serious bodily harm to support a finding of probable cause based on what the complainant's parents told Detective Wade the complainant had told them — that the juvenile would "push his pants down and then push him onto the ground" before entering him. This information is hearsay, but a grand jury may rely on hearsay in determining probable cause. See *Commonwealth* v. *McGahee*, 393 Mass. 743, 746 (1985), quoting *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 655 (1979) ("indictment may stand which is based in part or altogether on hearsay"). Viewing the evidence in the light most favorable to the Commonwealth, as we must in determining the sufficiency of the evidence before a grand jury, *Commonwealth* v. *Moran*, 453 Mass. 880, 885 (2009), it is a reasonable inference that the act of physically pushing someone to the ground to be penetrated carries with it the implied threat of bodily harm if the person were to resist. Therefore, we conclude that the judge erred in finding the evidence insufficient to support a youthful offender indictment.[4]

ii. *Impairment of the integrity of the grand jury proceeding.*

---

[4]The Commonwealth argues that the act of sexual penetration of a child, by itself, creates a threat of serious bodily harm sufficient to meet the requirements of G. L. c. 119, § 54. We have never before held that this act alone, in every circumstance, creates a threat of serious bodily harm and we decline to do so here.

In *Commonwealth* v. *Clint C.*, 430 Mass. 219, 220-221, 226 (1999) (*Clint*

While the judge erred in dismissing the indictments on the ground that there was insufficient evidence presented to the grand jury, the judge did not err in concluding that "sufficient evidence was withheld from the grand jury to so seriously taint the proceedings as to warrant dismissal of the indictments."

A prosecutor has no duty to present all exculpatory evidence to a grand jury, but "[w]hen the prosecutor possesses evidence which would greatly undermine the credibility of evidence likely to affect the grand jury's decision to indict, the prosecutor must alert the grand jury to the existence of such evidence." *Commonwealth* v. *McGahee, supra.* See *Commonwealth* v. *O'Dell,* 392 Mass. 445, 446-447 (1984) (indictment dismissed where "integrity of the grand jury proceedings was impaired by an unfair and misleading presentation to the grand jury of a portion of a statement attributed to the defendant without revealing that an exculpatory portion of the purported statement had been excised"). See also *Commonwealth* v. *Mayfield,* 398 Mass. 615,

---

*C.*), where a fifteen year old uncle made his six year old niece, for whom he was babysitting, perform oral sex on him without verbal threats or physical injury, we held that "[i]n the circumstances here the invasive nature of the act of penetration created the threat of serious bodily harm." We concluded that the "juvenile's position of authority, the age difference between the juvenile and the victim, and the vulnerability of the victim are sufficient to support a youthful offender indictment." *Id.* at 226. But in *Commonwealth* v. *Quincy Q.,* 434 Mass. 859, 861, 863-864 (2001) (*Quincy Q.*), we concluded that the evidence of infliction or threat of serious bodily harm was not sufficient to support a youthful offender indictment where the grand jury heard evidence that the juvenile, when he was fifteen or sixteen years old, touched the vagina or buttocks of a child for whom he was providing child care when she was between three and five years of age without overtly threatening the child or inflicting serious bodily injuries. We distinguished the case from *Clint C.* by noting that, in *Clint C.,* the youthful offender indictment was justified by the act of penetration, combined with the factors of authority, age difference, and vulnerability of the victim. *Quincy Q., supra* at 863-864.

Here, while there was penetration, none of the aggravating factors in *Clint C.* was present. The juvenile and complainant were friends; the juvenile was not in a position of authority over the complainant. The juvenile and complainant were fairly close in age — two and one-half years apart — and the complainant was significantly older than the young child victims in *Clint C.* and *Quincy Q.* There was no evidence presented to the grand jury that the complainant was more vulnerable than a typical seventh grader because he suffered from Asperger's Syndrome, nor any claim that his vulnerability approached that of the young child victims in *Clint C.* and *Quincy Q.* Nor, apart from the difference in age, is there any evidence that the complainant was comparatively more vulnerable than the juvenile, who also had Asperger's Syndrome.

620-621 (1986) (grand jury should be told of known exculpatory evidence that would greatly undermine credibility of important witness).

Here, the prosecutor possessed the transcript and videotape of the SAIN interview with the complainant, but did not offer either in evidence. If he had done so, the grand jury would have learned that, contrary to Detective Wade's testimony regarding the SAIN interview, the complainant in the SAIN interview never stated that the juvenile "push[ed] him onto the ground" or suggested that he had been forced to the ground by the juvenile. When the complainant explained what he meant when he stated that the juvenile "forced" or "ma[d]e" him engage in a particular sexual act, he clarified that the juvenile never used physical force against him. Not only would this testimony have contradicted Detective Wade's testimony that the complainant in the SAIN interview had said that the juvenile "would force [him] onto the ground and enter him from that position," but it also would have put in question the reliability of the parents' statement that the complainant told them the juvenile had pushed him to the ground to have sex with him.

The prosecutor was not required to provide the grand jury with a copy of the SAIN videotape or transcript, but he was required to furnish the grand jury with the exculpatory information in the interview that "would greatly undermine the credibility of evidence" regarding what in this case was a necessary element of the youthful offender indictments — that the offense involved the infliction or threat of serious bodily harm. See *Commonwealth* v. *McGahee, supra.* See also *Commonwealth* v. *O'Dell, supra; Commonwealth* v. *Mayfield, supra.* The prosecutor was on notice that the sufficiency of the evidence regarding this element was at issue, because a judge had issued a discovery order in the case approximately eight months before the grand jury proceedings in which he found that the complainant did not "indicate any physical coercion" in the SAIN interview and that the complainant's refusal to engage in certain sexual acts "was honored by the [juvenile]." Therefore, we conclude that the judge did not err in finding that evidence withheld from the grand jury seriously tainted the integrity of those proceedings. Nor did the judge err in concluding that the withheld evidence

was material to the question of probable cause as to this required element, and likely influenced the grand jury's decision to issue the indictments. See *Commonwealth* v. *Mayfield, supra* at 621-622 (dismissal of grand jury indictment requires showing that, considering entire grand jury record, evidence "probably made a difference" in grand jury's finding of probable cause). The indictments were properly dismissed without prejudice.

b. *October 7 order dismissing the youthful offender indict-ments with prejudice for failure to comply with discovery orders.* Where a party fails to comply with a discovery order, a judge may impose sanctions under Mass. R. Crim. P. 14 (c) (1), as appearing in 442 Mass. 1518 (2004). *Commonwealth* v. *Frith,* 458 Mass. 434, 442 (2010). We accept the judge's subsidiary findings of fact absent clear error and review her sanctions order for abuse of discretion or other error of law. *Commonwealth* v. *Carney,* 458 Mass. 418, 425 (2010). See *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 307 (1984).

We find no clear error in the finding that the Commonwealth failed to provide the statistical discovery relevant to a defense of selective prosecution that the judge had ordered, and that the failure had been "deliberate, willful and repetitive." After we issued our decision in *Commonwealth* v. *Washington W., supra,* on June 25, 2010, affirming the discovery order with minor modification, the Commonwealth should have gathered the statistical discovery and provided it to the juvenile.[5] The Commonwealth appeared to recognize this obligation at the hearing on July 8 because the prosecutor represented that the discovery would be produced at the next scheduled court date. The prosecutor, however, reneged on this representation, contending at the hearing that the Commonwealth no longer was obligated to provide the discovery because the youthful offender indictments had been dismissed and the Commonwealth intended to file a nolle prosequi on the delinquency complaints. The judge rejected this contention and ordered the Commonwealth to produce the discovery by August 31. The Commonwealth failed to comply

[5]The juvenile did not file a request for an expedited rescript and the Commonwealth did not file a petition for rehearing. The rescript issued to the Juvenile Court on July 23, 2010. See Mass. R. A. P. 23, as appearing in 367 Mass. 921 (1975).

with this order, move for reconsideration, or file a notice of appeal. Instead, the Commonwealth filed a nolle prosequi on the delinquency complaints on September 1, and remained in violation of the discovery order. When a hearing was held on October 7 on the juvenile's motion to dismiss the youthful offender indictments with prejudice, the prosecutor brought the ordered discovery with him but refused to produce it even after the judge offered to issue a protective order that would protect the confidentiality of the statistical discovery.

The Commonwealth defends its blatant disregard of the judge's discovery order by contending that the juvenile's discovery order had been rendered moot by the judge's dismissal of the youthful offender indictments and its issuance of a nolle prosequi on each of the delinquency complaints. The Commonwealth is wrong for two reasons. First, no party is entitled to disregard a court order based on its contention that the order is no longer necessary, especially where, as here, the judge rejected the contention. The Commonwealth could have moved to vacate the court order by claiming that the issue of selective prosecution had been rendered moot by the dismissal and nolle prosequi of the charges, but it made no such motion, and the judge made clear at the August 12 hearing that the order remained in effect. Unless and until a discovery order is vacated, it remains an order of the court, and a party that, as here, wilfully violates the order is subject to sanctions under rule 14 (c) (1).

Second, the issue of selective prosecution had not been rendered moot, because the July 2 dismissal of the youthful offender indictments was without prejudice and the judge correctly understood that the Commonwealth wished to proceed with prosecution of the juvenile on the statutory rape charges, either by seeking again to indict him as a youthful offender or by appealing from the judge's dismissal of the indictments. The juvenile had moved to foreclose the possibility of continued prosecution by seeking a dismissal with prejudice, based on his claim that he had been denied the possibility of such a dismissal on the ground of selective prosecution by the Commonwealth's refusal to produce the ordered statistical discovery. Where, as here, no appeal had yet been entered in an appellate court, the judge retained jurisdiction over the case and had the authority

to change the dismissal without prejudice to dismissal with prejudice.[6] *Commonwealth* v. *Cronk*, 396 Mass. 194, 196-197 (1985) (trial judge has authority to act on motions to rehear or vacate until divested of jurisdiction when party enters appeal). See *Commonwealth* v. *Adkinson*, 442 Mass. 410, 422 (2004); *Garland* v. *Beverly Hosp. Corp.*, 48 Mass. App. Ct. 913, 915 n.5 (1999) ("There is no question that if the judge had chosen to rule on the grounds alleged, he could have done so, because the appeal had not yet been docketed in the Appeals Court").

Having concluded that the judge did not err in finding that the Commonwealth had deliberately, wilfully, and repeatedly failed to comply with the discovery order, we turn to whether the judge abused her discretion in imposing the sanction of dismissing the youthful offender indictments with prejudice. "Upon the failure of the Commonwealth to comply with a lawful discovery order, a judge 'may impose appropriate sanctions, which may include dismissal of the criminal charge.' " *Commonwealth* v. *Cronk*, *supra* at 198, quoting *Commonwealth* v. *Douzanis*, 384 Mass. 434, 436 (1981). We have recognized that "dismissal of a criminal case is a remedy of last resort because it precludes a public trial and terminates criminal proceedings." *Commonwealth* v. *Mason*, 453 Mass. 873, 877 (2009), quoting *Commonwealth* v. *Cronk*, *supra*. We affirm such dismissals only where there is egregious prosecutorial or police misconduct and prejudice to the defendant's right to a fair trial, and where the dismissal is necessary to cure the prejudice. See *Commonwealth* v. *Mason*, *supra* at 877-878. See also *Commonwealth* v. *Frith*, 458 Mass. 434, 442 (2010) (rule 14 [c] [1] sanctions are designed to protect defendant's right to fair trial, are remedial in nature, and should be tailored to cure any prejudice resulting from discovery violation); *Commonwealth* v. *Carney*, 458 Mass. 418, 428 (2010) (rule 14 [c] [1] sanctions are "limited to orders that

---

[6]When the judge ordered the dismissal of the youthful offender indictments with prejudice, the Commonwealth had yet to file a notice of appeal of the dismissal without prejudice. Even after a notice of appeal has been filed, the judge retains jurisdiction of a case until the appeal is subsequently "entered." See *Commonwealth* v. *Cronk*, 396 Mass. 194, 194 n.1 (1985) ("We consider the appeal to have been 'entered,' not merely on notice of appeal, but when the claim of appeal is received by the appellate court").

are remedial in nature, aimed at curing any prejudice caused by the violation of a discovery obligation and ensuring a fair trial'').

Here, there was egregious prosecutorial misconduct in repeatedly and wilfully failing to comply with the discovery order. There was also prejudice to the juvenile's right to a fair trial in that the juvenile was denied the opportunity to develop a factual basis in support of his claim that he was a victim of selective prosecution because the sexual conduct was homosexual rather than heterosexual. If the evidence were to support that claim, the juvenile may have been entitled to a dismissal with prejudice. *Commonwealth* v. *King*, 374 Mass. 5, 19 (1977) (''We conclude that a female charged with prostitution or night walking would be entitled to a dismissal of the charges with prejudice on an appropriate showing that the police department or the prosecutor's office followed an unjustifiable policy of selective enforcement against female prostitutes and not male prostitutes'').

In *Commonwealth* v. *Washington W.*, 457 Mass. 140, 147 (2010), we held that the juvenile's claim of selective prosecution was ''sufficiently serious to warrant further inquiry'' and that the juvenile was entitled to most of the statistical data sought in discovery to develop a factual basis to support his allegations. We also recognized that a claim of selective prosecution may be constitutional in nature.[7] *Id.* at 142, quoting *Commonwealth* v. *King, supra* at 20 (''While some selectivity is permissible in criminal law enforcement, the Federal and Massachusetts Constitutions guarantee that the government will not proceed against an individual based on 'an unjustifiable standard such as race, religion, or other arbitrary classification' ''). The juvenile's right to a fair trial, therefore, included the right to develop the factual basis necessary to support his claim of selective prosecution, and the prosecutor's refusal to comply with the judge's discovery order essentially denied him the opportunity to evaluate and present this claim.

The judge did not abuse her discretion in concluding that dismissal with prejudice was necessary to cure the prejudice to

---

[7]In *Commonwealth* v. *Washington W.*, 457 Mass. 140, 143 (2010), we did not reach the issue whether an allegation of selective prosecution must be based on discriminatory treatment of someone who is a member of a protected class or whether sexual orientation is a protected class in Massachusetts.

the juvenile's right to a fair trial caused by the prosecutor's egregious misconduct in refusing to produce the ordered discovery. Without the ordered statistical data, the juvenile lost the opportunity to move for a dismissal with prejudice on the ground of selective prosecution, and faced the risk of renewed prosecution if the Commonwealth were to seek new youthful offender indictments from a grand jury or were to prevail in its appeal from the judge's July 2 order. The only way to cure the denial of this lost opportunity was to grant the juvenile the relief he potentially could have obtained had he received the ordered discovery and demonstrated that he was a victim of selective prosecution.

The Commonwealth contends that dismissal with prejudice was not warranted because it would have produced this discovery had it obtained new youthful offender indictments or prevailed on appeal, and the juvenile then could have presented his claim of selective prosecution. The opportunity eventually to present this claim would not cure the loss of the earlier opportunity to present it. First, even if he ultimately were to prevail on his selective prosecution claim, the juvenile would have suffered the anxiety and uncertainty arising from the renewed prosecution. Second, the delay in prosecution means that the juvenile, if convicted of statutory rape and incarcerated, would serve time in State prison, not a Department of Youth Services facility. When the complainant's allegations were reported to the police on May 7, 2007, the juvenile was sixteen years and three months old. The juvenile is now twenty-one years old. Under G. L. c. 119, § 72 (*b*), the Juvenile Court no longer has jurisdiction to commit the juvenile to the custody of the Department of Youth Services. The Juvenile Court will retain jurisdiction of the case and, under G. L. c. 119, § 53, "as far as practicable, [the juvenile] shall be treated, not as [a criminal], but as [a child] in need of aid, encouragement and guidance," but the sentencing alternatives available to the Juvenile Court judge if the juvenile were convicted are now more limited than they were in August and September, 2010, when the prosecutor violated the judge's discovery order.

We therefore conclude that the judge did not abuse her discretion in deciding that dismissal of the youthful offender indictments with prejudice was necessary to cure the prejudice caused

to the juvenile's right to a fair trial by the prosecutor's egregious misconduct in wilfully and repeatedly violating the discovery order.[8]

3. *Conclusion.* For the foregoing reasons, we affirm the Juvenile Court judge's July 2, 2010, order dismissing the youthful offender indictments without prejudice, and the October 7, 2010, order dismissing the indictments with prejudice.

*So ordered.*

---

[8]In view of this holding, we need not address the juvenile's argument that the youthful offender indictments should have been dismissed because they did not allege the statutory predicates for charging the juvenile as a youthful offender.