APPEALS COURT 
 
 COMMONWEALTH vs. ANGEL PENA-LARA

 
 Docket:
 22-P-592
 
 
 Dates:
 March 11, 2024 – September 10, 2024
 
 
 Present:
 Rubin, Englander, & D'Angelo, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Evidence, Informer. Witness, Police informer, Privilege. Practice, Criminal, Disclosure of identity of informer, Dismissal.
 
 

             Complaint received and sworn to in the Dorchester Division of the Boston Municipal Court Department on December 17, 2019.
            A motion to dismiss was heard by Lisa Ann Grant, J. 
            Brooke Hartley, Assistant District Attorney, for the Commonwealth.
            Zachary Lown for the defendant.
            D'ANGELO, J.  The Commonwealth appeals from a Boston Municipal Court judge's dismissal of a complaint against the defendant, Angel Pena-Lara, after the Commonwealth failed to comply with the judge's discovery order regarding information about a confidential informant (CI).  Although we conclude that the Commonwealth improperly asserted the CI privilege as to certain discovery requests and should have complied with the judge's discovery order, we hold that the judge erred by failing to consider less severe sanctions and thus abused her discretion in ordering dismissal.  We therefore vacate the order allowing the motion to dismiss the complaint and remand the matter for further proceedings consistent with this opinion.
            Background.  The following facts and quotations are taken from a Boston police incident report prepared by Officer Dennis Crowley.  On December 16, 2019, the police "had received recent information from a Carded Boston Police Informant [(CI)] regarding an unknown Dominican male . . . operating a 2004 Honda Accord color red bearing Massachusetts plates . . . selling heroin."[1]  Officers conducted surveillance and observed the Honda drive to the corner of Lyford Street and Callender Street in the Dorchester section of Boston, where they saw the driver, subsequently identified as the defendant, holding his cell phone to his ear as he parked the vehicle.  The officers observed a white male, whose identity was not determined, leave a building on Lyford Street and approach the Honda.  The defendant got out of the Honda, opened the trunk, and both men leaned into the trunk area.  Officer Crowley observed the defendant appear to hand something to the unknown male.  The item was small enough for the unknown male to conceal it in his cupped left hand.  The unknown male went back into the building on Lyford Street, and the defendant reentered the Honda while holding something in his left hand.  Within two minutes, the unknown male came back out of the building and approached the passenger side window of the Honda.  He leaned in and appeared to have a conversation with the defendant for about twenty seconds before going back inside the building.  The defendant drove away in the Honda.
            The officers suspected that a drug transaction had occurred between the defendant and the unknown male.  As a result, the police stopped the Honda and asked the defendant to step out of the car.  The defendant was "breathing rapidly and shallow and appeared to be quite nervous.  Officer Crowley placed his hand over [the defendant]'s heart and felt it beating extremely fast."  The police searched the defendant and found currency in different bundles and drugs.  
            The defendant was arraigned on December 17, 2019, on a complaint charging him with trafficking of more than ten grams of fentanyl, in violation of G. L. c. 94C, § 32E.[2]  Seventeen months after the defendant's arrest, a motion to suppress hearing was scheduled for May 14, 2021.  Eight days before the scheduled evidentiary hearing, the Commonwealth provided the defendant's attorney with a memorandum written by Officer Crowley, dated May 4, 2021, and entitled "Confidential Informant Veracity/Reliability" (May 4 memorandum).
            The May 4 memorandum stated that the CI referenced in the December 16, 2019 police report had engaged in "numerous past investigations" involving "drug distribution."[3]  It further stated that "[m]any" such investigations led to the issuance of search warrants and the seizure of "marijuana, cocaine, heroin, fentanyl, crack cocaine, prescription pills, firearms and United States currency," "some" resulting in convictions in "District, Superior and/or Federal courts."  And, for the very first time, the May 4 memorandum asserted that the CI conducted a controlled buy from the defendant "within [seventy-two] hours prior to the [defendant's] arrest."[4] 
            1.  The defendant's discovery requests.  The defendant subsequently filed a "Motion for Discovery of Basis of Knowledge and Reliability of Confidential Informant" and an accompanying affidavit of defense counsel.  The motion sought the following information:
"1.  Statements of the [CI].  This includes all statements or other communications of the {CI] related to the investigation.  Defendant also requests the date and time of such communications, the means by which they were made (for example, in-person, over text, over the phone), the names of the persons to who[m] the statement was made, the names of the persons present when such statements were made [(statements of the CI)].
"2.  Track record of the [CI].  A list of cases where the [CI] provided information, including:  the defendant(s) name, docket number, court of jurisdiction, what the information led to, and the final disposition of the case [(track record of the CI)].
"3.  Controlled-buy.  Date, location and name of all officers present during an alleged controlled-buy that involved the [CI] and the Defendant in this case, as well as the location of the observed interaction and the officers surveillance location [(controlled buy information)].
"4.  Motive to lie.  Whether the [CI] had pending charges, prior convictions, or received any other consideration for his work [(promises, rewards and inducements)].
"5.  Prior information.  The dates of prior investigations that the [CI] was involved." 
Defense counsel's affidavit stated, "It is anticipated that the Commonwealth will rely on the communications and reliability of the [CI] to sustain its burden at a suppression hearing." 
            The Commonwealth filed a written opposition to the defendant's motion, arguing that "[t]he government's privilege not to disclose the identity of an informant," Commonwealth v. Dias, 451 Mass. 463, 468 (2008), shielded it from disclosing the identity of the CI in this case.  Importantly, the Commonwealth acknowledged that it intended to introduce all of the evidence contained in the May 4 memorandum and police incident report and that it intended to rely on the CI's veracity and basis of knowledge at the motion to suppress hearing.  The Commonwealth argued, however, that disclosure of the CI's identity was improper because the CI was not an active participant in the offense charged against the defendant, see Commonwealth v. Brzezinski, 405 Mass. 401, 408 (1989), nor was the CI present at the time of the defendant's arrest, see Commonwealth v. Velez, 77 Mass. App. Ct. 270, 275-276 (2010).  After hearing arguments on the motion, the judge took the matter under advisement.
            2.  Order of disclosure.  In a written decision, the judge ordered the Commonwealth to provide the following: 
"A) statements of [the CI] and communications between [the CI] and the [Boston police department] related to the controlled buy and this investigation (including the date and time of such communications[,] the means by which they were made, the names of the persons to whom the statement(s) were made, and the names of the persons present when such statements were made); B) the . . . date, location, and name of all officers present during the alleged controlled buy that involved [the CI] and the Defendant, as well as the location of the observed interaction and the officers' surveillance location . . . ; and C) [the CI's] motive to lie (whether [the CI] had pending charges, prior convictions, and/or received promises, inducements, or rewards in consideration for [the CI's] work with [the Boston police department])." 
            The judge denied the defendant's request for the track record of the CI and the dates of prior investigations in which the CI was involved.  The judge also ordered that defense counsel could not disclose the information to the defendant without first seeking leave from the court.
            The Commonwealth's motion for reconsideration was denied.  After obtaining a stay in the trial court, the Commonwealth filed a petition for an interlocutory appeal with a single justice of the Supreme Judicial Court.  On April 28, 2022, the single justice denied the Commonwealth's petition.  She stated that if the Commonwealth believed that any information it was required to turn over would reveal the CI's identity, it might seek, "inter alia:  (a) to submit those specific materials to the judge for in camera review before providing the materials to defense counsel; (b) different or additional terms for a protective order; or (c) redaction of particular information."  
            The Commonwealth took none of these steps.  Instead, on May 25, 2022, the Commonwealth filed a "Notice of Noncompliance" that informed the judge that it would neither follow the single justice's suggestions nor comply with any aspect of the trial court discovery order.[5]  The Commonwealth did not argue that the judge's protective order was inadequate or explain why it might be so.  The judge allowed the defendant's oral motion to dismiss.  The Commonwealth filed a timely notice of appeal.
            Discussion.  "There is no question that a judge may in [her] discretion order discovery of information necessary to the defense of a criminal case, and that, on failure of the Commonwealth to comply with a lawful discovery order, the judge may impose appropriate sanctions, which may include dismissal of the criminal charge" (citations omitted).  Commonwealth v. Douzanis, 384 Mass. 434, 436 (1981).  The Commonwealth challenges the judge's discovery order underlying the allowance of the motion to dismiss, arguing that the disclosure of the information required by the discovery order would reveal the identity of the CI.  
            1.  Standard of review.  We review for an abuse of discretion a decision on a motion for disclosure of information subject to the Commonwealth's assertion of an informant's privilege.  See Commonwealth v. D.M., 480 Mass. 1004, 1006 (2018).  "An appellate court's review of a [motion] judge's decision for abuse of discretion must give great deference to the judge's exercise of discretion; it is plainly not an abuse of discretion simply because a reviewing court would have reached a different result."  Vazquez Diaz v. Commonwealth, 487 Mass. 336, 344 (2021), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives."  Vazquez Diaz, supra at 345, quoting L.L., supra.  
            2.  Discovery of information regarding an informant.  "The government's privilege not to disclose the identity of an informant has long been recognized in this Commonwealth."  Dias, 451 Mass. at 468.  The justification for the privilege is to encourage "citizens to communicate their knowledge of the commission of crimes to law-enforcement officials."  Roviaro v. United States, 353 U.S. 53, 59 (1957).  The Commonwealth argues that all of the information sought by the defendant is protected under the confidential informant privilege.  See Commonwealth v. Bonnett, 472 Mass. 827, 846-847 (2015), S.C., 482 Mass. 838 (2019), citing Roviaro, supra at 60.  See also Mass. G. Evid. § 509 (2024).  
            The Bonnett analysis of whether an "informant's identity should be kept confidential under the privilege or disclosed 'may best be described as generally occurring in two stages.'"  Commonwealth v. Whitfield, 492 Mass. 61, 68 (2023), quoting Bonnett, 472 Mass. at 846.  
"The first stage involves preliminary determinations as to (a) whether the Commonwealth has properly asserted an informant privilege, and (b) whether the defendant has adequately challenged the assertion of the privilege as an impermissible interference with his or her right to present a defense.  The second stage of the analysis then involves a balancing test, introduced by the United States Supreme Court in Roviaro, [353 U.S. at 59,] in which the interest of the public in protecting the anonymity of informants is weighed against the defendant's right to defend himself."  
Bonnett, supra 846-847.  However, prior to the application of the Bonnett analysis, the defendant must first make a discovery request for information regarding an informant.  In this case, the defendant made such a request regarding the CI after receiving the May 4 memorandum.  In this case, the Commonwealth never argued that the discovery requested by the defendant was not relevant.  Therefore, unless the requested information is privileged as determined by the Bonnett analysis, it should have been provided to the defendant.
            3.  Application of the Bonnett analysis.  a.  Assertion of the privilege.  The first stage of the Bonnett analysis has two prongs.  The first is whether the Commonwealth has properly asserted the privilege.  "[T]he privilege may be asserted only where disclosure would endanger the informant or otherwise impede law enforcement efforts."  Bonnett, 472 Mass. at 847.  See Puerto Rico v. United States, 490 F.3d 50, 62 (1st Cir. 2007), cert. denied, 552 U.S. 1295 (2008).  "Ordinarily, the facts indicating whether or not the privilege would serve its underlying purpose are within the Commonwealth's control."  Bonnett, supra.  "[T]he privilege 'not only protects the release of the name of the informant but also forbids the disclosure of details that would in effect identify the informant.'"  Whitfield, 492 Mass. at 68, quoting Commonwealth v. John, 36 Mass. App. Ct. 702, 706 (1994).  But "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged" (emphases added).  Whitfield, supra, quoting Roviaro, 353 U.S. at 60.
            The Commonwealth's opposition to the defendant's discovery motion did not identify which of the discovery sought would effectively reveal the CI's identity.  Indeed, it made no assertion that any of the information would.[6]  "[C]onsideration of whether disclosure of requested information, short of an informant's name and address, might place an informant in danger has always been part of a case-specific inquiry into whether the informant privilege is properly invoked."  Whitfield, 492 Mass. at 70 n.11.  See Commonwealth v. Amral, 407 Mass. 511, 526 n.11 (1990) (privilege properly asserted where disclosure of requested information "would be tantamount to revealing the informant's identity"); Douzanis, 384 Mass. at 436 n.4 (applying privilege where requested information "would in effect identify the informant" and permitting judge on remand to consider "whether full or partial disclosure of the demanded information would in fact reveal the informant's identity").
            The court in Whitfield concluded, based solely on the type of information requested by the defendant, that the Commonwealth's invocation of the informant privilege was proper.  The "extensive amount of information requested by the defendant would, in effect, reveal the informant's identity such that the informant's privilege is applicable to this case," and that the requests for the track record of the informant with respect to prior cases, and details with respect to when during the prior thirty days the informant had seen the defendant with firearms within her home, would effectively identify the defendant.  Whitfield, 492 Mass. at 70.
            In this case, the motion judge implicitly found, as the Supreme Judicial Court did in Whitfield, that the Commonwealth had validly asserted the informant privilege as to the track record of the CI and the prior investigations in which the CI had been involved.[7]  And for those requests, the judge denied the defendant's request for that information.[8]
            Some of the other discovery requested does not fall within that category.  For example, it is not apparent how promises, rewards, and inducements by the Commonwealth to the CI would reveal the identity of the CI.  Nor is it clear that the controlled buy information (or some of that requested information) would reveal the CI's identity.[9]  But more importantly, here the Commonwealth never asserted it would.  A judge should not be left to guess how the Commonwealth's responses to defense discovery requests would disclose the CI's identity.  It is incumbent on the Commonwealth, when asserting the informant privilege, to provide that information to the motion judge.  In this case, the Commonwealth did not do so.[10]  Therefore, the judge's discovery order was not an abuse of discretion.  See Whitfield, 492 Mass. at 70.[11]  
            4.  Judge's sanction of dismissal.  "We review the judge's sanctions order for abuse of discretion or other error law."  Commonwealth v. Edwards, 491 Mass. 1, 7 (2022), quoting Commonwealth v. Sanford, 460 Mass. 441, 445 (2011).  "Sanctions for noncompliance with discovery are within the judge's discretion" (citation omitted).  Commonwealth v. Frith, 458 Mass. 434, 440 (2010).  Two principles govern a judge's imposition of sanctions for a discovery violation.  "First, sanctions are remedial in nature.  Second, sanctions should be tailored appropriately to cure any prejudice resulting from a party's noncompliance and to ensure a fair trial" (citation omitted).  Sanford, supra at 446.  Judges must tailor remedies for prosecutorial misconduct to the injury suffered and balance the defendant's rights against the need to preserve society's interest in the administration of justice.  See Commonwealth v. Cronk, 396 Mass. 194, 199 (1985).  "Absent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice."  Commonwealth v. Cinelli, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983). 
            Because dismissal is a "remedy of last resort" and only warranted "where there is egregious prosecutorial or police misconduct and prejudice to the defendant's right to a fair trial, and where the dismissal is necessary to cure the prejudice," Edwards, 491 Mass. at 9, quoting Commonwealth v. Washington W., 462 Mass. 204, 215 (2012), a judge should consider other available alternative remedies to cure the discovery violation.  See Commonwealth v. Dilworth, 494 Mass. ____ , ____ (2024).  A court may, for example, "in its discretion exclude evidence for noncompliance with a discovery order issued or imposed pursuant to [rule 14]."  Mass. R. Crim. P. 14 (c) (2), as appearing in 442 Mass. 1518 (2004).  See Commonwealth v. Carney, 458 Mass. 418, 426-427 (2010) (discussing remedies).  See also Commonwealth v. Delaney, 11 Mass. App. Ct. 398, 403 (1981) (exclusion appropriate remedy for intentional nondisclosure of alibi rebuttal witness). 
            On this record, where there is no evidence that the judge considered a less severe sanction than dismissal, we conclude that the judge erred in failing to undertake such consideration before ordering dismissal.  We vacate the order allowing the motion to dismiss and remand the matter for the judge to consider a less severe sanction for the failure of the Commonwealth to provide any of the appropriately ordered discovery regarding the CI.  
So ordered.
 
footnotes

 
            [1] "A 'carded' informant is one whose identity is known to commanding officers and whose cooperation with law enforcement has been approved."  Commonwealth v. Whitfield, 492 Mass. 61, 63 n.6 (2023).
            [2] The charge was subsequently amended to possession of a class A substance (fentanyl) with intent to distribute, in violation of G. L. c. 94C, § 32 (a). 
            [3] We note that the May 4 memorandum was not signed by Officer Crowley under the pains and penalties of perjury.  Thus it deserves less credence than would a search warrant affidavit setting forth the same information.  
            [4] It is unclear why the officer created the May 4 memorandum some seventeen months after the defendant's arraignment and shortly prior to the motion to suppress hearing.  In the trial court, the prosecutor reported that the memorandum was "provided just prior to and in anticipation of litigating the Defendant's motion to suppress, which was set for hearing on May 14, 2021." 
            5 The defendant argues that the Commonwealth waived its right to contest the validity of the discovery order in the current appeal by not seeking further review of the single justice's denial of its petition for emergency relief.  We disagree.  See Commonwealth v. Douzanis, 384 Mass. 434, 436 n.5 (1981).
            [6] The Commonwealth stated in its notice of noncompliance and confirmed at oral argument before us that the police have refused to disclose the identity of the CI to the prosecution.  The prosecution's failure to identify what discovery might reveal the identity of the CI may reflect the prosecutor's not knowing what is in the material being withheld.  We have concerns about the ability of the prosecutor to make representations about what the material in the possession of the police -- and thus in the possession of the Commonwealth, see Mass. R. Crim. P. 14 (a) (1) (A), as amended, 444 Mass. 1501 (2005) -- does or does not contain when the material has been withheld from the prosecution.  When the police refuse to provide information to the prosecution, it is unclear how the prosecution can comply with its discovery obligations, including providing exculpatory evidence. 
            [7] As to the defendant's discovery request seeking the statements of the CI, we can see situations where such statements would divulge the identity of the CI.  In light of our conclusion that the Commonwealth failed to comply with a lawful discovery order, we need not reach the issue whether the discovery order for that information was proper.  However, it would be prudent in the future for the Commonwealth to properly and with specificity assert the CI privilege if it believes it applies.
            [8] The defendant filed no cross appeal from the discovery order.
            [9] In some situations, we can envision that some of that information would effectively divulge an informant's identity, but not in all situations.  For example, disclosure of whether or not an informant received favorable treatment in the informant's own criminal case would likely not disclose the informant's identity, but disclosure of the specific details of the case would.
            [10] Perhaps the prosecution, again, did not provide the motion judge such information because the prosecutor did not know it.  The prosecution's sole sources of information about the CI appears to be Officer Crowley's unsworn police incident report and the unsworn May 4 memorandum, which was dated seventeen months after the defendant's arrest.  In a criminal case, the prosecution must obtain sufficient information about the police investigation to fulfill its constitutional and statutory discovery obligations.  Where the prosecution does not or cannot provide those details to the court, a criminal prosecution may be impossible.
            [11] Also, unlike the situation in Whitfield, the judge here issued a protective order that, in essence, allowed only defense counsel access to the information sought without further leave of the court.