NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11644

FELIX F., a juvenile  vs.  COMMONWEALTH.


Suffolk.     February 5, 2015. - May 26, 2015.

Present:  Gants, C.J., Cordy, Botsford, Duffly, Lenk, & Hines,
JJ.


Youthful Offender Act.  Controlled Substances.  Grand Jury.
     Practice, Criminal, Grand jury proceedings, Indictment.
     Evidence, Grand jury proceedings, Threat.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on December 9, 2013.

     The case was heard by Spina, J.


     Paul R. Rudof, Committee for Public Counsel Services
(Joseph D. Mulhern, Jr., Committee for Public Counsel Services,
with him) for the juvenile.
     Shoshana E. Stern, Assistant District Attorney, for the
Commonwealth.


     HINES, J.  The defendant, a juvenile, was indicted as a

youthful offender under G. L. c. 119, § 54, for possession of

heroin with intent to distribute, in violation of G. L. c. 94C,

§ 32 (a).  Under the youthful offender statute, a juvenile may

be prosecuted as an adult if the charge involves the "infliction or threat of serious bodily harm." G. L. c. 119, § 54. Arguing that the evidence presented to the grand jury was insufficient to establish this requirement, the juvenile moved to dismiss the indictment. A judge in the Juvenile Court denied the motion,[1] and the juvenile filed a petition for relief pursuant to G. L. c. 211, § 3. This appeal, from the denial of the juvenile's petition, presents the issue whether evidence of the generalized potential for harm from the distribution and use of heroin meets the probable cause standard for "infliction or threat of serious bodily harm."[2] We conclude that it does not and reverse the decision of the single justice denying the defendant's G. L. c. 211, § 3, petition.[3]

---

[1] The juvenile was also indicted as a youthful offender on a charge of possession of marijuana with intent to distribute, G. L. c. 94C, § 32C (a). The judge allowed the juvenile's motion to dismiss that indictment. The Commonwealth does not contest the dismissal.

[2] Because the single justice concluded that there is no other adequate appellate remedy to the loss of the protective nature of juvenile proceedings if a juvenile is erroneously tried as a youthful offender, this court determined that the requirements of S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001), had been met and permitted the juvenile to pursue this appeal from the judgment of the single justice.

[3] If a youthful offender indictment is dismissed, the prosecutor must proceed by complaint, rather than indictment. See Commonwealth v. Quincy Q., 434 Mass. 859, 864 (2001).

Background.   Only one witness, a Taunton police officer, testified before the grand jury.  We summarize that testimony as background for our discussion.  On August 27, 2013, at approximately 2:45 P.M., the officer observed two males on an all-terrain, off-road vehicle traveling at a high rate of speed in the opposite direction on Oak Street in Taunton.  He was concerned for the safety of the males and other motorists because of the speed of travel and because the males were not wearing helmets, a requirement of all-terrain vehicle use.

The males looked directly at the officer and then turned onto railroad tracks running perpendicular to the road.  The officer drove down various crossroads to the railroad tracks in an effort to get in front of the vehicle, eventually stopping his police cruiser twenty to thirty yards in front of the males. When the officer got out of his cruiser, the vehicle stopped and the two males identified themselves.  The driver was eighteen years of age and the juvenile, a passenger, was sixteen years of age.

The juvenile got off of the vehicle without prompting.  The officer then ordered the driver to do so and both to lie on the ground.  After a second officer appeared, the first police officer pat frisked the driver while the second officer pat frisked the juvenile.  On the driver, the officer found a baggie containing a small amount of marijuana, approximately $300, two

bags of heroin the size of golf balls, two cellular telephones, a small white pill, and a lighter. The substance found on the driver was field tested and indicated positive for heroin. On the juvenile, the second officer found a mason jar full of marijuana, a small baggie of marijuana, and two cellular telephones. Both the driver and the juvenile were arrested. Because the juvenile was on probation, he was taken to a juvenile detention facility. When personnel at the detention facility were preparing the juvenile's clothes to be laundered, they found a larger baggie containing several smaller baggies of a substance, believed to be heroin, hidden in a hood of the juvenile's clothing.

To support the intent to distribute element of the offense, the Commonwealth elicited testimony from the police officer identifying several factors indicative of distribution rather than personal use: the packaging, the hidden location, and the quantity of heroin. One of the cellular telephones carried by both the driver and the juvenile was a disposable, inexpensive telephone often used in the sale of narcotics. The officer noted that the driver and the juvenile did not appear to be under the influence of any drugs and did not exhibit withdrawal symptoms.

As to the requirement of the juvenile offender statute that the offense involve the "infliction or threat of serious bodily

harm," the Commonwealth adduced testimony that heroin is highly addictive and a "pretty nasty drug." The officer related his professional experience with heroin overdoses, where users become extremely ill and die. In addition to the description of the effect of heroin on users, the officer testified that the drug trade is associated with acts of violence, explaining that drug deals may result in "robberies, guns, knives, violence, you know, injuries involved. It can be a very violent trade." He added that persons involved in the drug trade as drug dealers are known to be dangerous to themselves as well as others. No testimony suggested the juvenile's direct connection to any violence or threat of violence in the commission of the offense. The grand jury were instructed that they could consider the underlying facts of the offense in addition to the testimony describing the violent consequences of the drug trade to determine the defendant's youthful offender status.

Discussion. In order to support a youthful offender indictment, the Commonwealth must present evidence sufficient to support a finding of probable cause as to the following statutory requirements: (1) the juvenile was between fourteen and seventeen years old at the time of the offense; (2) the offense, if committed by an adult, is punishable by imprisonment in State prison (i.e., a felony); and (3) the juvenile previously has been committed to the Department of Youth

Services, or "the offense involves the infliction or threat of serious bodily harm," or the juvenile committed certain enumerated firearms violations. G. L. c. 119, § 54.

The juvenile contests the sufficiency of the evidence to establish probable cause as to the third requirement, specifically that the offense charged must involve either "the infliction or threat of serious bodily harm," the only one of the three options for satisfying the requirement that could be applicable, and argues that the indictment must be dismissed on this ground. See Commonwealth v. Washington W., 462 Mass. 204, 209-210 (2012) (indictment subject to dismissal unless grand jury presented "with sufficient evidence to support a finding of probable cause" to believe requirements are satisfied); Commonwealth v. Quincy Q., 434 Mass. 859, 862-863 (2001). The Commonwealth counters that the mere possession of heroin with the intent to distribute satisfies the definition of "threat" because heroin is inherently dangerous and possession of heroin with intent to distribute is a very serious crime that has the "potential" to cause actual serious bodily harm. Although we agree that heroin is a dangerous drug with the potential to cause overdose deaths and that possession of the drug with intent to distribute is a serious crime, the potential for harm derived from heroin is not what the Legislature intended when

setting forth the "threat" requirement for a youthful offender indictment.

In accordance with legislative intent and the approved usage of the term "threat," we hold that the definition of "threat" in the juvenile offender statute requires a communication or declaration, explicit or implicit, of an actual threat of physical injury by the juvenile. Accordingly, we reject the Commonwealth's suggestion that a "threat," for this purpose, may be based solely on a potential for harm that may occur independently of the defendant's actions.

We construe statutes according to the Legislature's intent as expressed in the words of the statute and read in light of "the ordinary and approved usage of the language." Hanlon v. Rollins, 286 Mass. 444, 447 (1934), citing Commonwealth v. S.S. Kresge Co., 267 Mass. 145, 148 (1929). "At the same time, a statute should be read as a whole to produce an internal consistency." Telesetsky v. Wight, 395 Mass. 868, 873 (1985). Beginning with the words of the statute, the Legislature expressed its intent with regard to offenses that are serious and have a potential for harm but which do not themselves involve either an infliction or threat of serious bodily harm. In setting forth this requirement for a youthful offender indictment, the Legislature explicitly enumerated certain firearms offenses that trigger a youthful offender indictment,

but did not enumerate any drug offenses.  See G. L. c. 119, § 54.  Like heroin, firearms are inherently dangerous,[4] but only firearms offenses are specifically enumerated in the youthful offender statute.  If the Legislature intended "threat" to include a mere potential for harm, there would have been no need to separately enumerate firearms offenses.

While this is our first opportunity to consider the application of the statute where the conduct underlying the crime does not itself involve an explicit threat and there is no identifiable victim, we are guided as well by our interpretation of the phrase, "threat of serious bodily harm," in prior cases under the juvenile offender statute.  See Washington W., 462 Mass. at 210; Quincy Q., 434 Mass. at 863-864; Commonwealth v. Clint C., 430 Mass. 219, 225-226 (1999).  We have noted that the "infliction or threat of serious bodily harm" need not be an element of the crime itself, but the conduct constituting the offense must involve the infliction or threat of serious bodily harm.  Quincy Q., supra at 863, citing Clint C., supra at 225.  The parties agree that the conduct test, not the element test, is operative here and that only the "threat" of serious bodily harm is at issue here.

---

[4] See Commonwealth v. Tu Trinh, 458 Mass. 776, 784 (2011) (describing firearm as inherently dangerous weapon).

We discern no legally cognizable threat of serious bodily harm in the juvenile's conduct in this case. From the evidence presented to the grand jury, it is undisputed that the juvenile did not engage in conduct that communicated an explicit threat to any person. Where, as here, the juvenile has not made an explicit threat of serious bodily injury, we have considered whether the conduct involves an implicit threat based on the effect of that conduct on the victim. See Washington W., 462 Mass. at 210; Quincy Q., 434 Mass. at 863-864; Clint C., 430 Mass. at 226. In Clint C., supra at 220, the juvenile was indicted for rape of a child. The juvenile had an authoritative and dominant position over the six year old victim for whom the juvenile was babysitting. Id. In those circumstances, the invasive nature of penetration combined with the young victim's vulnerability to domination by the older juvenile was sufficient to establish an implicit threat of serious bodily harm. Id. at 226. In Washington W., supra at 210 & n.4, we emphasized that the juvenile's conduct must be considered in relation to the effect on the victim and rejected the Commonwealth's argument that the act of penetrating a child, without more, satisfies the threat of serious bodily harm component of the youthful offender statute. We concluded, however, that the test was satisfied because the victim could reasonably perceive an implied threat

of bodily harm if he were to resist based on the juvenile's act of pushing him to the ground before penetration.  Id. at 210.

Our holding today is in accord with our interpretations of "threat" in other contexts, which consider the effect of the defendant's actions on a victim where there has not been an explicit threat.  In our interpretation of the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, we defined a "threat" as "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm."  Kennie v. Natural Resource Dep't of Dennis, 451 Mass. 754, 755, 763 (2008), quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass 467, 474, cert. denied, 513 U.S. 868 (1994).  The offense of threat to commit a crime, G. L. c. 275, § 2, requires that there be "an expression of intention to inflict a crime on another"; the expression may contain an explicit or implicit threat.  See Commonwealth v. Hamilton, 459 Mass. 422, 426-427 (2011), quoting Commonwealth v. Sholley, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001).  For purposes of the rape statute, G. L. c. 265, § 22, "threats of bodily harm" may be expressed or implied, so long as it is reasonable in the circumstances for the complainant to be in fear and not resist.  Commonwealth v. Sherry, 386 Mass. 682, 694, 696 (1982).  Further, a "threat," for purposes of the offense of accosting or annoying a person of the opposite sex, G. L. c. 272, § 53, may occur "even in the

absence of an explicit statement of an intention to harm the victim as long as circumstances support the victim's fearful or apprehensive response."  Commonwealth v. Chou, 433 Mass. 229, 234 (2001).  None of these cases relies on a mere potential for harm independent of the defendant's specific conduct; instead, they consider whether the defendant made an explicit threat of bodily harm or if the defendant's conduct created an implied threat through its effects on the victim, neither of which occurred here.

The Commonwealth attempts to distinguish the facts of this case by analogizing to manslaughter convictions where distribution of heroin was determined to be conduct that "involves a high degree of likelihood that substantial harm will result to another."  Commonwealth v. Catalina, 407 Mass. 779, 780, 789 (1990), quoting Commonwealth v. Welansky, 316 Mass. 383, 399 (1944).  Commonwealth v. Auditore, 407 Mass. 793, 796 (1990), quoting Welansky, supra.  Those cases support our view, however, because the court considered whether the defendant engaged in the wanton or reckless conduct necessary for the manslaughter conviction by reviewing the defendant's actions and the circumstances of the heroin distribution.  In Catalina, supra at 790 & n.12, the defendant's knowledge that the heroin was highly potent and that the recipient had a low tolerance and a prior overdose were considered in connection with the inherent

dangerousness of the drug. In Auditore, supra at 796, the court considered the defendant's sale of a type of heroin that was two times stronger than the average dose and had previously caused two deaths in the local area.

In this case, the evidence presented to the grand jury lacked any information about the potency of the heroin found on the juvenile. As there was no identifiable buyer, there was no information about known history of abuse or the effect that a sale could have on a buyer. Although there was evidence that drug deals can result in "robberies, guns, knives, [and] violence," there was no evidence that the juvenile's offense involved weapons or violent conduct. With other evidence that the juvenile's conduct created an implied threat of serious bodily harm, possession of heroin with the intent to distribute could be a factor supporting that finding. The mere potential for serious bodily injury or death from the sale or use of heroin, however, without evidence of an explicit or implied threat tied to the juvenile's conduct, is insufficient to support a youthful offender indictment.

Conclusion. Because the evidence presented to the grand jury does not support a finding that the juvenile's conduct explicitly or implicitly created a threat of serious bodily harm, we reverse the decision of the single justice denying the defendant's G. L. c. 211, § 3, petition. The case is remanded

to the county court, where the single justice is directed to enter an order reversing the Juvenile Court judge's order denying the defendant's motion to dismiss.

<u>So ordered</u>.