NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12152

N.M., a juvenile vs. COMMONWEALTH.

Suffolk.     March 7, 2017. - October 10, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.[1]

Youthful Offender Act.  Practice, Criminal, Indictment, Interlocutory appeal.  Rape.

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on June 15, 2016.

The case was considered by Botsford, J.

Harry C. Mezer (Joseph J. Machera also present) for the juvenile.
Ronald E. DeRosa, Assistant District Attorney, for the Commonwealth.
Robert E. McDonnell, Vanessa M. Brown, & Joshua Silverstein, for Youth Advocacy Division of the Committee for Public Counsel Services, amicus curiae, submitted a brief.

BUDD, J.  Here we consider whether a juvenile, who has been indicted as a youthful offender, is entitled as of right to

---

[1] Justice Hines participated in the deliberation on this case prior to her retirement.

interlocutory review of a denial of a motion to dismiss that indictment.  We also consider whether the youthful offender indictment in this case was sufficiently supported by probable cause.  We conclude that a juvenile is not entitled to G. L. c. 211, § 3, interlocutory review as a matter of right in these circumstances.  Nevertheless, we exercise our discretion to reach the merits of the petition and conclude that the youthful offender portion of the indictment was not sufficiently supported by probable cause because the charged conduct did not involve the infliction or threat of serious bodily harm.[2]

Background.  The following facts are taken from the testimony and exhibits presented to the grand jury.  In December, 2014, or January, 2015, the complainant disclosed to her mother that her female cousin, the juvenile, had been sexually touching her for the last few years, starting when the complainant was age five or six and the juvenile was age fourteen or fifteen.  The girls attended weekly dance classes together and afterward would spend time in the juvenile's bedroom napping or watching movies, away from adult supervision. The complainant told her mother that in this setting the juvenile had "kissed" her on her breasts, "touched" and

---

[2] We acknowledge the amicus brief submitted by the youth advocacy division of the Committee for Public Counsel Services.

"inserted [a] finger" in her vagina, and "instructed" her to touch the juvenile's vagina.  The complainant's mother reported the sexual activity to police in May, 2015.

Investigators conducted a sexual abuse intervention network interview,[3] during which time the complainant shared similar descriptions of the activities.[4]  The complainant reported that the juvenile would sometimes discuss her sex life with the complainant and would "explain what she was doing" to the complainant when she touched the complainant.  Sometimes the sexual touching "kind of hurt" because the complainant "was littler than [the juvenile]."  Sometimes the complainant "did want to do it," but other times she (in her mind) did not but nevertheless "felt like [she] had to."  In response to a question from a member of the grand jury, a detective testified that the juvenile had made no threats to the complainant, and that the juvenile and the complainant "care[d] a lot" about each

---

[3] The sexual abuse intervention network (SAIN) was established to avoid multiple interviews of children who may have suffered abuse.  A SAIN interview team is generally made up of members of several different agencies, one or more of whom interview the child.  See Commonwealth v. Howard, 446 Mass. 563, 565 n.1 (2006).

[4] The Commonwealth includes additional arguments based on academic studies that were not before the single justice.  We decline to consider these materials or the arguments based thereon.  G. L. c. 211, § 3.  See, e.g., Tran v. Zoning Bd. of Appeals of Provincetown, 439 Mass. 1005, 1006 n.4, cert. denied, 540 U.S. 1008 (2003), citing Milton v. Boston, 427 Mass. 1016, 1017 (1998).

other.  The juvenile told the complainant to tell her to stop the touching if it hurt.

A grand jury returned a youthful offender indictment against the juvenile, charging her with rape of a child.[5]  See G. L. c. 119, § 54; G. L. c. 265, § 23.  The juvenile moved to dismiss the indictment, citing insufficient evidence to establish probable cause to believe that the alleged conduct involved the infliction or threat of serious bodily harm.  After the denial of that motion, she petitioned for review by a single justice of this court pursuant to G. L. c. 211, § 3.  The single justice denied the petition, and the juvenile appealed.

Discussion.  1.  Interlocutory review.  In general, "there is no right to interlocutory review of the denial of a motion to dismiss pursuant to G. L. c. 211, § 3."  Flood v. Commonwealth, 465 Mass. 1015, 1016 (2013).  The court's extraordinary power of superintendence under G. L. c. 211, § 3, "will not ordinarily be exercised to review interlocutory rulings in criminal cases, since the rights of criminal defendants are generally fully

_____

[5] The seeking of a youthful offender indictment differentiates this case from one in which the Commonwealth files a complaint for delinquency, the adjudication of which is not a criminal proceeding.  G. L. c. 119, §§ 53, 74.  "A 'delinquent child' is subject to essentially rehabilitative penalties and remedies, while a 'youthful offender' is subject to penalties ranging from placement in a [Department of Youth Services] facility to adult sentences in the State prison."  Commonwealth v. Mogelinski, 466 Mass. 627, 641 (2013), citing Commonwealth v. Connor C., 432 Mass. 635, 645 (2000).

protected through the regular appellate process." Costarelli v. Commonwealth, 374 Mass. 677, 679 (1978). See Jackson v. Commonwealth, 437 Mass. 1008, 1009 (2002); Ventresco v. Commonwealth, 409 Mass. 82, 83-84 (1991). Where truly extraordinary circumstances are present, however, a defendant may obtain review by "demonstrat[ing] both a substantial claim of violation of [her] substantive rights and irremediable error, such that [she] cannot be placed in statu quo in the regular course of appeal." Morrissette v. Commonwealth, 380 Mass. 197, 198 (1980). "In such a case, [a] single justice may decide the issues presented, report the matter to the full court, . . . or authorize an interlocutory appeal to be taken to the Appeals Court for a decision on the merits" (citation omitted). Forlizzi v. Commonwealth, 471 Mass. 1011, 1012 (2015).

Here, the juvenile claims a right to interlocutory review of the denial of her motion to dismiss under G. L. c. 211, § 3, because, she argues, if the Commonwealth proceeds against her as a youthful offender, she will lose the protections afforded by juvenile proceedings. These include privacy and confidentiality considerations, such as having the record and proceedings shielded from public access. See, e.g., G. L. c. 119, §§ 60A, 65. See also Doe v. Attorney Gen. (No. 1), 425 Mass. 210, 212-213 & n.8 (1997). Loss of the rights afforded by the protective juvenile cloak, she argues, cannot be remedied in the ordinary

appellate process because, once her identity is disclosed, there would be no way to regain her privacy; if she is convicted and sentenced as an adult, she would be sent to an adult prison; and the ability to discipline her as a child would be lost.  See Felix F. v. Commonwealth, 471 Mass. 513, 514 n.2 (2015).

We acknowledge that the ordinary appellate process will not restore the protective nature of juvenile proceedings if it is later determined that the juvenile has been erroneously tried as a youthful offender.  Nonetheless, her claims are not akin to a "right not to be tried," a right we have protected by recognizing a very limited exception to the general rule against interlocutory appeal for a petition for relief from the denial of a motion to dismiss on double jeopardy grounds.  See Forlizzi, 471 Mass. at 1013.  "In that circumstance, because the double jeopardy right is a right not to be tried, we have held that 'appellate review of [the denial of the motion to dismiss] after trial and conviction would not provide adequate relief if the defendant were to prevail . . . .'"  Flood v. Commonwealth, 465 Mass. 1015, 1016 (2013), quoting McGuinness v. Commonwealth, 423 Mass. 1003, 1004 (1996).  See also Gangi v. Commonwealth, 462 Mass. 158, 160 n.2 (2012) (right not to be tried on sexually dangerous person petition).  Otherwise, we have "consistently rejected attempts to obtain interlocutory review as a matter of right under G. L. c. 211, § 3, of denials of motions to dismiss

on other bases that defendants have attempted to analogize to double jeopardy claims."  Soucy v. Commonwealth, 470 Mass. 1025, 1026 (2015), citing Grand-Pierre v. Commonwealth, 461 Mass. 1003, 1004 (2011) (challenge to constitutionality of statute under which defendant was charged), Garden v. Commonwealth, 460 Mass. 1018, 1019 (2011) (statute of limitations claim), Fitzpatrick v. Commonwealth, 453 Mass. 1014, 1015 (2009) (jurisdictional claim), Bateman v. Commonwealth, 449 Mass. 1024, 1024-1025 (2007) (challenge to sufficiency of evidence before grand jury), Cousin v. Commonwealth, 442 Mass. 1046, 1046 (2004) (speedy trial claim), King v. Commonwealth, 442 Mass. 1043, 1044 (2004) (claim of preindictment delay), and Jackson, 437 Mass. at 1009 (due process challenge to prosecution).  See Brea v. Commonwealth, 473 Mass. 1012, 1012-1013 (2015) (prearraignment denial of motion to dismiss).  The juvenile's claims in this case involve a claimed right to be tried in a different forum, not the right not to be tried at all, and the limited exception does not apply.  See Watkins v. Commonwealth, 469 Mass. 1006, 1006 (2014).

Where we do not recognize a right to interlocutory review, even the absence of an adequate alternative remedy, as the juvenile claims here, does not by itself make review under G. L. c. 211, § 3, automatic.  See, e.g., Care & Protection of Zita, 455 Mass. 272, 278 (2009); Commonwealth v. Cook, 380 Mass. 314,

319 (1980). It remains incumbent on a juvenile in these circumstances to demonstrate that his or her claims are suitable for consideration under G. L. c. 211, § 3. Although, as it happens, a single justice exercised his discretion in an earlier case to review the merits of the denial of a motion to dismiss a juvenile's indictment as a youthful offender, see Felix F., 471 Mass. at 513-514, his decision to do so in that case "does not compel us to decide that the single justice should have done so in this case, or must do so in every instance." Esteves v. Commonwealth, 434 Mass. 1003, 1004 (2001). See Watkins, 469 Mass. at 1006 (decision to transfer proceedings from Juvenile Court to Superior Court, pursuant to G. L. c. 119, § 74, may be reviewed on direct appeal). In this case, we are satisfied that the single justice neither erred nor abused her discretion in denying interlocutory review. The court's power of superintendence is exercised sparingly, and the juvenile did not demonstrate that any extraordinary circumstance compelled the single justice to accord review.

The question whether a juvenile has a right to interlocutory review under G. L. c. 211, § 3, of the denial of a motion to dismiss a youthful offender indictment was not settled at the time we issued our order under S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001), allowing this appeal to proceed. For that reason we directed the parties to brief both that

threshold procedural issue and the substantive merits of the judge's underlying ruling on the motion to dismiss. Although we now have concluded that there is no right to review as a matter of law, and we therefore would not ordinarily consider the merits of the underlying order where the single justice did not exercise his or her discretion to allow interlocutory review, see Ventresco, 409 Mass. at 83-84, we exercise our discretion to reach the merits in this case.

2. Sufficiency of the evidence. The juvenile argues that the grand jury did not hear sufficient evidence to support her indictment as a youthful offender under G. L. c. 119, § 54. See Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). We consider evidence heard by the grand jury in the light most favorable to the Commonwealth. Commonwealth v. Moran, 453 Mass. 880, 885 (2009).

The Commonwealth may pursue a criminal charge against a juvenile by indictment only where

> "[the] person is alleged to have committed an offense . . . while between the ages of fourteen and [eighteen] which, if [she] were an adult, would be punishable by imprisonment in the [S]tate prison, and the person has previously been committed to the [D]epartment of [Y]outh [S]ervices, or the offense involves the infliction or threat of serious bodily harm."

G. L. c. 119, § 54. Here the prerequisites concerning the juvenile's age and the nature of the offense are met. As the juvenile has not "previously been committed to the [D]epartment

of [Y]outh [S]ervices," the issue remaining is whether "the offense involves the infliction or threat of serious bodily harm."

There is no requirement that the infliction or threat of serious bodily harm be an element of the crime itself; however, where a prosecutor seeks a youthful offender indictment relying on the serious bodily harm component of § 54, the conduct constituting the offense must involve the infliction or threat of serious bodily harm.  Commonwealth v. Quincy Q., 434 Mass. 859, 863 (2001), citing Commonwealth v. Clint C., 430 Mass. 219, 225 (1999).  Here, the Commonwealth argues that the evidence presented was sufficient for the grand jury to find probable cause that the juvenile subjected the complainant to a threat of serious bodily harm.[6]  We disagree.

The youthful offender act does not define the phrase "threat of serious bodily harm."  See G. L. c. 119, §§ 52, 54. See also Clint C., 430 Mass. at 225.  Generally, this element is satisfied when the juvenile defendant makes a communication or declaration, explicit or implicit, of an actual threat of physical injury.  Felix F., 471 Mass. at 516.  In the specific context of child rape, a "juvenile's conduct must be considered

---

[6] The Commonwealth is not proceeding on the theory that probable cause existed to establish actual infliction of serious bodily harm to the victim.

in relation to the effect on the victim." Id. at 517. "[T]he act of penetrating a child, without more, [does not] satisf[y] the threat of serious bodily harm component . . . ." Id. at 517-518, citing Commonwealth v. Washington W., 462 Mass. 204, 210 & n.4 (2012).

The inquiry is fact-intensive. In Clint C., 430 Mass. at 226, we said that the juvenile's position of authority over the victim as her babysitter, the age difference between the teenage juvenile and the six year old victim, and the invasive nature of coerced fellatio were together sufficient to support a youthful offender indictment. In Washington W., 462 Mass. at 210, we upheld a youthful offender indictment because, in that case, "the [juvenile's] act of physically pushing [the victim] to the ground to be penetrated carries with it the implied threat of bodily harm if the [victim] were to resist." In contrast, in Quincy Q., 434 Mass. at 861, 863, we dismissed a youthful offender indictment because the teenage juvenile's conduct of touching the toddler victim, to whom he was ostensibly providing day care, over ten different occasions on her vagina and buttocks was not accompanied by any "evidence that the defendant overtly threatened [the complainant] or that serious bodily injuries were actually inflicted."

In this case, a grand juror asked if the juvenile explicitly threatened the complainant; the detective responded

that the juvenile did not and stated further that the juvenile and complainant "care[d] a lot" about one another.  The Commonwealth argues that, by digitally penetrating a complainant who is very young, among other "aggravating" factors, the juvenile "implicitly communicated an actual threat of physical injury."  We have held otherwise.  See Felix F., 471 Mass. at 518-519, citing Commonwealth v. Sherry, 386 Mass. 682, 694, 696 (1982), and Commonwealth v. Chou, 433 Mass. 229, 234 (2001) (implied threat found only where victim's failure to resist reasonably was caused by fear and apprehension).

Apart from the sexual conduct itself, the juvenile did not employ any additional violence or make any threats toward the complainant and specifically told the complainant to tell her to stop if it hurt.  Contrast Washington W., 462 Mass. 208, 210 (juvenile accomplished anal intercourse by physically forcing victim to ground).  That the complainant sometimes "did not want to do it" but nevertheless did "do it" is, in context, not the consequence of a fear that the juvenile would otherwise inflict serious bodily harm on her.  Given the evidence of the nature of the girls' relationship, the complainant was compliant because the juvenile was someone about whom the complainant "care[d] a lot."[7]  The grand jury heard nothing to suggest that the

---

[7] For the same reason, the fact that the complainant lied to her aunt on the juvenile's behalf about an unrelated incident

complainant feared for her safety.  Contrast id. at 208-209 (victim too "afraid" to tell parents about repeated aggressive sexual encounters where juvenile "instructed him not to tell anyone").

To be sure, the charged crime of rape of a child is a serious offense.  However, the juvenile's alleged conduct does not meet the threshold above which the youthful offender statute allows the case to be heard as a criminal matter rather than as a complaint for delinquency.

Conclusion.  We remand the case to the county court for entry of a judgment allowing the petition for relief under G. L. c. 211, § 3, and reversing the Juvenile Court judge's order denying the motion to dismiss.

So ordered.

---

does not constitute evidence that the complainant perceived a threat of serious bodily harm from the juvenile.