J.G., COMMONWEALTH vs., 100 Mass. App. Ct. 731

 
 COMMONWEALTH vs. J.G.

100 Mass. App. Ct. 731
 November 1, 2021 - February 22, 2022

Court Below: Juvenile Court, Franklin-Hampshire Counties
Present: Milkey, Kinder, & Sacks, JJ.

 

Youthful Offender Act. Rape. Practice, Criminal, Plea. Probable Cause. Statute, Construction. Words, "Serious bodily harm."

A Juvenile Court judge did not err in denying a sixteen year old juvenile's motion to dismiss a youthful offender indictment under G. L. c. 119, § 54, charging him with rape, where, looking to judicial interpretations of "serious bodily injury" to interpret the phrase "serious bodily harm" in § 54, there was probable cause for the grand jury to find that the offense involved the requisite infliction or threat of serious bodily harm, in that, from evidence that the victim experienced throbbing pain in her vaginal and anal areas when walking and sitting down, the grand jury reasonably could infer that she suffered significant bruises, abrasions, or both during the rape. [734-739] 

INDICTMENTS found and returned in the Superior Court Department on January 29, 2019. 

 Following transfer to the Franklin-Hampshire Counties Division of the Juvenile Court Department, a motion to dismiss was heard by Charles S. Belsky, J., a motion to reconsider was considered by him, and a conditional plea of guilty was accepted by him. 

Marissa Elkins for J.G.

Bethany C. Lynch, Assistant District Attorney, for the Commonwealth.

 SACKS, J. At issue here is whether a Juvenile Court judge erred in denying a motion to dismiss a youthful offender indictment under G. L. c. 119, § 54, charging the sixteen year old juvenile with the rape of an eighteen year old woman. G. L. c. 265, § 22 (b). The juvenile argued that the grand jury lacked probable cause to find that the particular facts of his offense "involve[d] the infliction or threat of serious bodily harm," as the youthful offender statute (§ 54) requires. After his motion to dismiss was denied, the juvenile tendered a conditional plea and was found to be a youthful offender, subject to his right to appeal the denial of

 Page 732 

 the motion. Having undertaken a "fact-intensive" inquiry of the serious bodily harm issue, as required by N.M. v. Commonwealth, 478 Mass. 89, 95 (2017), we conclude that the motion was correctly denied.

 Background. 1. The evidence. The grand jury heard evidence, including a recording of a sexual assault intervention network (SAIN) interview with Mary Jones (a pseudonym), that one night in January of 2017, Jones was at the home of the juvenile, who was her cousin, and was drinking with him, his brother, and a male friend. Jones became highly intoxicated and blacked out. She had no memory of going to bed that evening, but she awoke in the juvenile's bed. She was on her side facing the wall, and the juvenile lay between her and the wall, with his face close to hers. The juvenile asked repeatedly to have sex with her, and she refused. Her memory of the events was spotty due to her intoxication, but she recalled waking to find the juvenile touching her breast with his hand. She pushed his hand away and said, "No," to which he responded, "Why not?" He then put his mouth on her breast. She again told him to stop, and then turned onto her side, with her back to him, and fell back into unconsciousness.

 She next recalled regaining consciousness on her back with the juvenile on top of her. She was still intoxicated and, although she could not feel the juvenile inside her, he was breathing heavily and said, "you're so tight." She then passed out again.

 The next morning, Jones awoke to find that she was no longer wearing underwear, as she had been the night before. She asked the juvenile if he had put her breast in his mouth and had "put himself inside her," and he admitted that he had done both. Jones experienced pain in her vaginal and anal areas, "soreness and discomfort"; when she was walking it was a "dull, throbbing pain," but "every time [she] sat down it really, really hurt." That morning she spoke to the juvenile's brother and told him that the juvenile had raped her.

 Jones reported the incident to law enforcement in approximately August of 2018. During her SAIN interview, she did not report receiving any medical attention or suffering any lasting injury. The grand jury heard testimony from a police officer that, by the time Jones reported the incident, it was essentially too late for a medical examination to be useful. 

 Officers interviewed the juvenile's brother, who corroborated Jones's report that the group had been drinking. He stated that the next morning, Jones was sad and upset and told him that the

 Page 733 

 juvenile "might have, like, raped her." The brother stated that the juvenile himself had said that morning that he felt "disgusting." The juvenile, for his part, told officers that the group had been drinking and that Jones had spent the night in his bed. He could not remember what had happened but stated that "he wouldn't do anything like that."

 2. Complaint and indictments. Initially, the Juvenile Court issued a complaint charging the juvenile with delinquency by reason of two counts of rape (one of them anal), G. L. c. 265, § 22 (b), and one count of indecent assault and battery on a person fourteen years of age or older (IAB), G. L. c. 265, § 13H. The Commonwealth also presented the case to a grand jury and obtained youthful offender indictments for the same offenses. See Commonwealth v. Mogelinski, 466 Mass. 627, 642-643 (2013) (Commonwealth may, within double jeopardy limits, proceed on both tracks simultaneously).

 After the youthful offender case was transferred from the Superior Court to the Juvenile Court, the juvenile moved to dismiss the indictments. He argued, among other things, that the grand jury lacked probable cause to find that the offenses "involve[d] the infliction or threat of serious bodily harm in violation of law," as § 54 required here in order to treat him as a youthful offender. The judge allowed the motion with respect to the anal rape and IAB indictments but denied it with respect to the other rape indictment. [Note 1] 

 The judge then accepted the juvenile's conditional plea to that remaining indictment, [Note 2] found him to be a youthful offender, and committed him to the custody of the Department of Youth Services (department) until his twenty-first birthday. He was also sentenced to two years of incarceration, which was suspended for three years while he was supervised on probation.

 In the meantime, in the delinquency case, the charge relating to

 Page 734 

 anal rape was dismissed, [Note 3] and the juvenile tendered pleas of delinquent based on the remaining rape charge and the IAB charge. The judge accepted the plea only on the IAB charge and committed the juvenile to the department's custody until his twentieth birthday. Further delinquency proceedings relating to the remaining rape charge -- the one based on the same facts as the indictment at issue in this appeal -- were continued on the Commonwealth's motion. The delinquency case is not before us. 

 Discussion. 1. Youthful offender statute. "In order to support a youthful offender indictment, the Commonwealth must present evidence sufficient to support a finding of probable cause as to the following statutory requirements: (1) the juvenile was between fourteen and seventeen years old at the time of the offense; (2) the offense, if committed by an adult, is punishable by imprisonment in State prison (i.e., a felony); and (3) the juvenile previously has been committed to the Department of Youth Services, or 'the offense involves the infliction or threat of serious bodily harm,' or the juvenile committed certain enumerated firearms violations." Felix F. v. Commonwealth, 471 Mass. 513, 515 (2015), quoting § 54. 

 A motion to dismiss the indictment is a proper vehicle for challenging whether the Commonwealth met its burden on these three issues. See Commonwealth v. Quincy Q., 434 Mass. 859, 865 & n.7 (2001). On such a motion, the evidence must be viewed in the light most favorable to the Commonwealth, see Commonwealth v. Washington W., 462 Mass. 204, 210 (2012), to determine whether the grand jury had probable cause, i.e., heard "reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing" that the § 54 prerequisites were met (citation omitted). Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). Probable cause is a lower standard than proof by a preponderance of the evidence; "it does not demand any showing that . . . a belief be correct or more likely true than false." Commonwealth v. Skea, 18 Mass. App. Ct. 685, 689 (1984), quoting Texas v. Brown, 460 U.S. 730, 742 (1983). See Matter of a Grand Jury Investigation, 427 Mass. 221, 225, cert. denied sub nom. A.R. v. Massachusetts, 525 U.S. 873 (1998); Commonwealth v. Defrancesco, 99 Mass. App. Ct. 208, 213 (2021).

 Here, the juvenile concedes that the first two requirements are 

 Page 735 

met; he was sixteen at the time of the offense, and rape is a felony. He challenges only whether the evidence established probable cause to believe that the rape involved the infliction or threat of serious bodily harm. [Note 4]

 2. Serious bodily harm. Section 54 "does not define the phrase 'infliction or threat of serious bodily harm.'" Commonwealth v. Clint C., 430 Mass. 219, 225 (1999). "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meaning from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions" (citation omitted). Id.

 Importantly, § 54 does not require that the infliction or threat of serious bodily harm be an element of the offense. Rather, it requires that "the conduct constituting the offense itself involve[] the infliction or threat of serious bodily harm." Clint C., 430 Mass. at 225. See Felix F., 471 Mass. at 517; Quincy Q., 434 Mass. at 863. "The inquiry is fact-intensive." N.M., 478 Mass. at 95.

 The Supreme Judicial Court has observed, in another § 54 case, that "[w]e use 'serious bodily harm' and 'serious bodily injury' interchangeably." Commonwealth v. J.A., 478 Mass. 385, 388 n.6 (2017). As one of three examples, the J.A. court cited Felix F., 471 Mass. at 517; the Felix F. court stated that, for purposes of applying § 54, it saw "no legally cognizable threat of serious bodily harm in the juvenile's conduct" and then, two sentences later, stated that "the juvenile ha[d] not made an explicit threat of serious bodily injury" (emphases added). Felix F., 471 Mass. at 517. [Note 5] Similarly, in Quincy Q., the court affirmed the dismissal of a youthful offender indictment after agreeing with the motion

 Page 736 

 judge that there was no evidence of threats or infliction of "serious bodily injuries" (emphasis added). Quincy Q., 434 Mass. at 863. See N.M., 478 Mass. at 95, citing Quincy Q., supra. The Legislature has also used the terms interchangeably, [Note 6] as have we. [Note 7]

 Dictionary definitions are to the same effect. "Harm" is synonymous with "injury." See Webster's Third New International Dictionary 1034 (1986). "Serious bodily harm" is defined in Black's Law Dictionary simply by a cross-reference to the definition of "serious bodily injury." Black's Law Dictionary 861 (11th ed. 2019).

 The juvenile argues that we should look to the various statutory definitions of serious bodily injury, as he asserts the court did in J.A., 478 Mass. at 388, in order to determine how "serious" an instance of bodily harm must be to constitute serious bodily harm under § 54. [Note 8] But that reads J.A. too broadly. The court there was concerned with a different and narrower question: whether an offense that involved the infliction of serious physical harm on an animal involved serious bodily harm. Id. The court concluded that "[b]y and large the statutes that prohibit the infliction of serious bodily injury apply only to human beings," and it cited, as examples, "G. L. c. 265, § 13J (injury to child); [Note 9] G. L. c. 265,

 Page 737 

 § 13K (injury to elderly person); G. L. c. 265, § 13L (injury to child); G. L. c. 265, § 15A (injury to person by means of dangerous weapon); G. L. c. 265, § 15D (injury to person by strangulation); G. L. c. 265, § 40 (injury to physical exercise program participant)." J.A., supra. Although each of the cited statutes does contain a definition of serious bodily injury or a like term, see note 9, supra, the court neither referred to nor depended on those definitions for its conclusion that the term serious bodily injury generally refers to injury to a human being. See J.A., supra. 

 Moreover, none of those legislative definitions existed at the time the Legislature enacted the serious bodily harm language of § 54. "The phrase 'serious bodily harm' first appeared in the 1975 amendments to what is now known as the youthful offender statute." J.A., 478 Mass. at 389. In contrast, the earliest General Laws using the phrase "serious bodily injury" were not enacted until five years later, in 1980. See St. 1980, c. 459, § 6 (enacting new definition of forcible rape, G. L. c. 265, § 22 [a], that included serious bodily injury as aggravating factor); St. 1980, c. 459, § 8 (similar, amending G. L. c. 277, § 39). And no statutory definition of the phrase "serious bodily injury" was enacted until 1986. See G. L. c. 90, § 24L (3), as enacted by St. 1986, c. 620, § 17.

 By 1986, however, we had already determined that bruises and scrapes on a rape victim's back were sufficient to establish serious bodily injury for purposes of the aggravated rape statute. See Commonwealth v. Sumner, 18 Mass. App. Ct. 349, 352 (1984). Two years later, the Supreme Judicial Court held that a rape victim who suffered abrasions on her head and pain in her lower abdominal area had likewise suffered "serious bodily injury" under the aggravated rape statute. Commonwealth v. Pontes, 402 Mass. 311, 319 n.7 (1988). And not long thereafter, we concluded that a "swollen eye, swollen face, and facial bruises" constituted serious bodily injury under the same statute. Commonwealth v. Coleman, 30 Mass. App. Ct. 229, 235 (1991). [Note 10]

 Had the Legislature disagreed with these holdings, then, once it began enacting various definitions of serious bodily injury beginning in 1986, it could easily have added one of them to the aggravated rape statute, which it has amended twice since that

 Page 738 

 time. See St. 1998, c. 180, § 59; St. 2020, c. 253, § 92. Instead, the Legislature left it to the courts to continue to define what constituted serious bodily injury in the aggravated rape context. Similarly, the Legislature could have, but did not, add a definition of serious bodily harm to § 54's predecessor, G. L. c. 119, § 61, which the Legislature amended at least four times between 1986 and 1992, see St. 1990, c. 267, § 3; St. 1991, c. 488, §§ 2-6; St. 1992, c. 286, § 188; St. 1992, c. 398, § 3, or to § 54 itself, which the Legislature amended three times between 1996 and the present, see St. 1996, c. 200, § 2; St. 2013, c. 84, § 8; St. 2018, c. 69, §§ 73-74. 

Instead, the Legislature continued to leave to the courts the task of determining what constitutes serious bodily harm for purposes of § 54.

 We thus interpret that phrase with two considerations in mind: (1) the interchangeability of the terms serious bodily injury and serious bodily harm, and (2) the Legislature's evident willingness to continue to allow the courts to determine the meaning of serious bodily injury except where the Legislature has expressly enacted a definition of that term. [Note 11] In that light, we conclude that the proper approach is to continue to look to judicial interpretations of serious bodily injury in order to interpret the phrase serious bodily harm for § 54 purposes. The Legislature is free, of course, if dissatisfied with these interpretations, to enact a definition of serious bodily harm applicable to § 54.

 3. Probable cause determination. Against this backdrop, we proceed to consider whether the evidence before the grand jury established probable cause to believe that the juvenile's conduct involved the infliction of serious bodily harm. The grand jury heard evidence that Jones experienced a dull, throbbing pain in her vaginal and anal areas when walking and that "every time [she] sat down it really, really hurt." From that evidence, as well as Jones's statement that the juvenile had said to her, "you're so tight," the grand jury could reasonably infer that she suffered significant bruises, abrasions, or both during the rape. That met McCarthy's probable cause standard; the grand jury heard "reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing" that Jones had suffered such injuries. 

 Page 739 

 McCarthy, 385 Mass. at 163. The evidence need not have risen to the level of establishing that it was more likely than not that Jones had been thus injured. See Matter of a Grand Jury Investigation, 427 Mass. at 225; Skea, 18 Mass. App. Ct. at 689. 

 In light of the decisions concerning what sufficed to establish serious bodily injury to rape victims in Pontes, 402 Mass. at 319 n.7 (abrasions on head and pain in lower abdominal area), Coleman, 30 Mass. App. Ct. at 235 (swollen eye, swollen face, and facial bruises), and Sumner, 18 Mass. App. Ct. at 352 (bruises and scrapes on victim's back), we conclude that the grand jury here had probable cause to find that the juvenile inflicted serious bodily harm for purposes of § 54. [Note 12]

 Conclusion. The order denying the motion to dismiss the indictment is affirmed.

 So ordered.

FOOTNOTES
[Note 1] The judge dismissed the anal rape indictment on the ground that there was no probable cause to believe that the juvenile had penetrated Jones's anus. The judge dismissed the IAB indictment on the ground that there was no probable cause to believe that the offenses, as allegedly committed here, involved the infliction or threat of serious bodily harm. The dismissed indictments are not at issue in this appeal. 

[Note 2] The docket indicates that the plea was entered on November 5, 2019, pursuant to Commonwealth v. Gomez, 480 Mass. 240, 252 (2018). However, Gomez allowed conditional pleas only until such time as a rule governing such pleas was adopted. Id. Such a rule was adopted, effective September 1, 2019. See Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019). 

[Note 3] Although the record before us is unclear, the dismissal of that charge occurred on the same day the judge issued his decision concluding that there was no probable cause to support the youthful offender indictment for anal rape. 

[Note 4] The Commonwealth does not contend that the juvenile had been previously committed to the department or had committed any of the listed firearms offenses. 

[Note 5] As further examples, the J.A. court cited two cases in which the court had used the phrases interchangeably in discussing a defendant's entitlement to jury instructions on self-defense or the use of deadly force. J.A., 478 Mass. at 388 n.6, citing Commonwealth v. Pike, 428 Mass. 393, 396 (1998), and Commonwealth v. Cataldo, 423 Mass. 318, 323 (1996). The court has sometimes used the phrases interchangeably in other statutory contexts as well. See, e.g., Commonwealth v. Wade, 428 Mass. 147, 153 & n.5 (1998), S.C., 467 Mass. 496 (2014), and 475 Mass. 54 (2016) (referring twice to "serious bodily harm" in discussing aggravated rape under G. L. c. 265, § 22 [a], which refers to "serious bodily injury"). See also Commonwealth v. Fredette, 480 Mass. 75, 84 (2018), discussing Wade, supra. 

[Note 6] Under G. L. c. 233, § 23F, in certain cases where defendants seek to prove that they had a reasonable apprehension "that death or serious bodily injury was imminent," id., they may introduce expert testimony regarding how abusive relationships influence "the perception of the imminent nature of the threat of death or serious bodily harm." G. L. c. 233, § 23F (b). Cf. G. L. c. 123, § 1 (defining "[l]ikelihood of serious harm" in part by using term "injury"). 

[Note 7] See Shea v. Caritas Carney Hosp., Inc., 79 Mass. App. Ct. 530, 535, 538 (2011) (statutory duty to warn where patient poses danger of inflicting "serious bodily injury," G. L. c. 123, § 36B [1] [b], was inapplicable absent evidence of danger that patient would inflict "serious bodily harm"). 

[Note 8] The Legislature has enacted numerous definitions of "serious bodily injury"; although they differ slightly from each other, they contain certain common elements. Among these are a substantial risk of death and loss or impairment (sometimes required to be protracted) of a bodily function, limb, or organ. See, e.g., G. L. c. 265, §§ 13A, 13K, 13L; G. L. c. 119, § 21; G. L. c. 90, § 24L; G. L. c. 21L, § 1. Many definitions include permanent (or protracted and obvious) disfigurement. See G. L. c. 265, §§ 13A, 13K, 13L; G. L. c. 119, § 21; G. L. c. 21L, § 1. A few definitions include extreme physical pain, see G. L. c. 119, § 21; G. L. c. 21L, § 1; total disability, see G. L. c. 90, § 24L; unconsciousness, reproductive or genetic damage, or a substantially increased risk of cancer or other chronic ailment, see G. L. c. 21L, § 1; or death, see G. L. c. 258, § 1. 

[Note 9] The term used in G. L. c. 265, § 13J, is "substantial bodily injury." 

[Note 10] Although not controlling here, we note the principle that, in the felony-murder context, "the common-law felony of rape is inherently dangerous." Commonwealth v. Baez, 427 Mass. 630, 634 (1998), citing Commonwealth v. Matchett, 386 Mass. 492, 505 n.15 (1982). 

[Note 11] Neither party here has briefed whether the rule of lenity would apply in interpreting the phrase serious bodily harm, and therefore we do not consider the issue. See Commonwealth v. Resende, 474 Mass. 455, 469 (2016), citing Commonwealth v. Richardson, 469 Mass. 248, 254 (2014). 

[Note 12] We therefore need not consider whether there was probable cause to believe that the juvenile's offense involved a "threat" of such harm within the meaning of § 54. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.